1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CPCI,

          Plaintiff,

    v.

TECHNICAL TRANSPORTATION, INC.,

          Defendant.

Case No.  C04-1519L

ORDER REGARDING
DEFENDANT'S MOTION *IN LIMINE*

## I.  INTRODUCTION

This matter comes before the Court on a motion *in limine* filed by defendant Technical Transportation, Inc. ("Tech Trans").  (Dkt. #35).  Tech Trans seeks an order (1) excluding all reports issued by third-party "deinstallers" regarding the condition of the plasma televisions before their tender to Tech Trans, as well as any hearsay comments from the deinstallers, (2) ordering that the jury be instructed as to a spoliation inference regarding the destruction of the sets, and (3) excluding statements made by the truck drivers.  For the reasons set forth below, the Court grants in part and denies in part the motion *in limine*.

The Court also notes that the findings and conclusions in this order, like all rulings *in limine*, are preliminary and can be revisited at trial based on the facts and evidence as they are actually presented.  See, e.g., Luce v. United States, 469 U.S. 38, 41 (1984) (explaining that a

1  ruling *in limine* "is subject to change when the case unfolds, particularly if the actual testimony

2  differs from what was contained in the proffer.  Indeed even if nothing unexpected happens at

3  trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in*

4  *limine* ruling.").  Subject to these principles, the Court issues this ruling for the guidance of the

5  parties.

6  ## II.  DISCUSSION

7  In December 2001, Impart, Inc. ("Impart") purchased approximately 184 used plasma

8  screen television sets from NEC.  Impart contracted with Digitron Communications, Inc.

9  ("Digitron") to de-install the sets from various locations across the country and transport them to

10  Impart's facility in Seattle.  Digitron subcontracted the transportation of the sets to Tech Trans, a

11  certified and registered surface forwarder of freight.  Impart subsequently determined that 63 of

12  the sets arrived with latent transit damage.  Impart did not attempt to sell the sets and determined

13  that they were a total constructive loss.

14  Digitron insured the sets on Impart's behalf for $2,800 with The Hartford Insurance

15  Company, which is subrogated to Digitron's rights regarding the claim at issue; plaintiff CPCI is

16  the assignee of The Hartford's claims regarding the loss.

17  **A.    The Deinstallers' Records.**

18  Digitron subcontracted with various third parties to deinstall the sets from various

19  locations.  Digitron provided the deinstallers with a form work order on which they could make

20  notations to confirm that the sets were "functioning properly."  Tech Trans seeks to exclude the

21  completed forms on the grounds that they contain hearsay; CPCI argues that they are subject to

22  the business records exception to the hearsay rule.  The business records exception applies if a

23  record is "made at or near the time by, or from information transmitted by, a person with

24  knowledge, if kept in the course of a regularly conducted business activity, and if it was the

25  regular practice of that business activity to make the . . . [record], all as shown by the testimony

26  of the custodian or other qualified witness . . . ."  Fed. R. Evid. 803(6).  First, Tech Trans argues

27

28  ORDER REGARDING DEFENDANT'S
MOTION *IN LIMINE* - 2

1    that the forms were not generated pursuant to Digitron's regular business practice because this

2    project was their first with deinstalling plasmas and working with some of the subcontractors.

3    Digitron, however, is in the business of subcontracting with audio-visual technicians to

4    accomplish its electronics services as it did here.

5        Second, Tech Trans argues that there is no evidence that the reports were made in the

6    regular course of the deinstallers' business.  However, the deinstallers were technicians from

7    various audio-visual companies.  They were instructed to complete a form for each set and they

8    did so.  There is no evidence that the forms were created for purposes of litigation, which would

9    undermine their reliability.  Third, Tech Trans contends that plaintiff has not offered the

10   testimony of the records custodian or other qualified witness who can testify as to the methods

11   of keeping the information.  Digitron's project manager has described how the information was

12   gathered and maintained and presumably will do so at trial.  Although Tech Trans argues that

13   her knowledge of the project is limited, it is sufficient to satisfy the requirements of the rule, and

14   the weight of the records and her testimony can be determined at trial.  The Court also finds that

15   the subcontractors who made their entries on the forms were "authorized" persons and rejects

16   Tech Trans' objection to the records on that basis.[1]

17       Accordingly, the Court finds that the forms are business records under the exception to

18   the hearsay rule, and the forms and any recitation of facts therein are admissible.  However,

19   because the forms were not submitted to the Court for review, the Court makes no ruling

20   regarding the admissibility of other statements in the forms.  Tech Trans may renew its objection

21   at trial if the forms contain additional elements of hearsay, opinion testimony, or otherwise

22

23       [1] See, e.g., United States v. Pitman, 475 F.2d 1335, 1337 (9th Cir. 1973) (explaining that
     an entry on a form is admissible if it is "made by an authorized person, to record information
24   known to him or supplied by another authorized person").  As in Pitman, the subcontractor
     technicians in this case were an "integral part" of Digitron's business, and were therefore
25   authorized persons rather than outsiders.  Id.; see also Saggu Dep. at p. 20 (describing length of
     Digitron's relationship with the subcontractors, which ranged from two years to "ten years
26   plus").

27

28   ORDER REGARDING DEFENDANT'S
     MOTION *IN LIMINE* - 3

1  inadmissible material.

2  **B.     Spoliation Inference.**

3       After Impart determined that the television sets had been damaged in transit, Digitron

4  submitted a claim on its behalf to its insurer, The Hartford, which subsequently paid the claim in

5  full.  The Hartford then directed its independent adjuster to sell the television sets at salvage.

6  The Court, in its discretion, may sanction a party who destroyed evidence by instructing the jury

7  that it may infer that the evidence would have been unfavorable to the responsible party.  See,

8  e.g., Medical Lab. Mgmt. Consultants v. Am. Broadcasting Cos., 306 F.3d 806, 824 (9th Cir.

9  2002).  Tech Trans argues that such an instruction is warranted in this case because it never had

10  the opportunity to inspect the sets.

11       The issue of whether a spoliation instruction is warranted is a close call in this case.  On

12  the one hand, Tech Trans was never warned that The Hartford was going to destroy the sets, and

13  it has had no opportunity to inspect them after CPCI filed suit.  The Hartford's claim

14  representative knew he should retain the sets for at least some period of time to "back up [its]

15  subrogation claim against Tech Trans."  Lovlien Dep. (Dkt. #35) at p. 52.  On the other hand,

16  the standard in the industry is to retain the damaged property in its original condition "until the

17  carrier has had an opportunity to inspect it."[2]  Tech Trans had that opportunity after the claim

18  was filed but declined to do so.  Batcha Dep. (Dkt. #33-3) at p. 78 (explaining that Tech Trans

19  did not inspect the sets because they had "no intention" of paying the claim).  Although Tech

20  Trans argues that it did not know that The Hartford intended to pursue litigation and if it had, it

21  would have inspected the sets, The Hartford gave Tech Trans explicit notice that it planned to

22  pursue litigation if Tech Trans continued to refuse to pay the claim.  See Declaration of Cary

23  Dictor (Dkt. #33), Ex. B (letter from The Hartford to Tech Trans noting that they planned to

24

25       [2] See S. Sorkin, Goods in Transit, § 8.03.  Although Tech Trans objects to any reliance on
26  the treatise because it does not address spoliation in the context of litigation, it is persuasive
    authority on the issue of the industry standard.
27

28  ORDER REGARDING DEFENDANT'S
    MOTION IN LIMINE - 4

1    seek reimbursement from Tech Trans and "pursue recovering through litigation" if necessary).

2    Although it is unclear when the sets were destroyed, it appears that it was at least a month after

3    the threatening letter was sent and about eight months after the alleged damage occurred.

4           Additional factors support declining to give a spoliation instruction.  First, Tech Trans

5    believed it had sufficient information to determine fault and deny the claim without examining

6    the sets.  Batcha Dep. at p. 65 (Tech Trans' decisionmaker explaining that he reviewed the MTI

7    inspection report and information regarding how the sets were packaged).  The former Impart

8    technician who worked extensively on the sets was deposed in February 2005, and that

9    deposition is an additional source of information about their condition.  A spoliation inference is

10   not necessary or warranted because Tech Trans has alternate, though perhaps somewhat less

11   reliable, sources from which to determine fault.  See, e.g., Medical Lab. Mgmt. Consultants, 306

12   F.3d at 825 (affirming denial of spoliation inference where Medical Lab had available to it other

13   evidence to challenge the claim, and failed to pursue it).  Second, Tech Trans was contractually

14   obligated by its insurer to give it notice of the claim and allow it to inspect the sets, yet it did not

15   do so.  That failure suggests that Tech Trans bears at least some responsibility for the fact that

16   no inspection occurred.  Batcha Dep. at pp. 76-78.  Finally, although the destruction of the sets

17   was not a mere accident, there is no evidence that CPCI or The Hartford destroyed the sets

18   because they believed they would be harmful to their case.  See, e.g., Akiona v. United States,

19   938 F.2d 158, 161 (9th Cir. 1991) (finding that the district court erred in sanctioning a party for

20   spoliation because there was no evidence that the party destroyed the evidence "with the intent

21   of covering up information").  Instead, The Hartford salvaged the sets to mitigate its damages

22   and avoid paying expensive storage fees.  Lovlien Dep. (Dkt. #33-4) at p. 39.  In light of these

23   circumstances, a spoliation instruction would not serve the purposes of the inference, and it is

24   not warranted.  Cf. Akiona, 938 F.2d at 161 (explaining that the inference has both an

25   evidentiary rationale and a prophylactic/punitive one).

26

27

28   ORDER REGARDING DEFENDANT'S
     MOTION *IN LIMINE* - 5

**C.     Statements by Third-Party Truck Drivers.**

Tech Trans argues that the Court should exclude as hearsay any testimony from Impart's personnel or other witnesses regarding comments allegedly made by one or more of the delivery truck drivers that some of the sets had been dropped during transit.  The statements are hearsay; CPCI argues that they are nevertheless admissible as statements against a party by its "agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship . . . ."  Fed. R. Evid. 801(d)(2)(D).  Although CPCI argues that the drivers were employed to deliver the freight, it has offered no evidence that the delivery truck drivers were employed by Tech Trans or were otherwise its agent.  Accordingly, the statements by the truck drivers are inadmissible hearsay.

### III.  CONCLUSION

For all of the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Tech Trans' motion *in limine* as set forth more fully above (Dkt. #35).


DATED this 14th day of October, 2005.


Robert S. Lasnik
United States District Judge

ORDER REGARDING DEFENDANT'S
MOTION *IN LIMINE* - 6